Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| FRANCIS JAVIER SANTIAGO MALDONADO<br><br>Apelante<br><br>v.<br><br>RUTH N. ALVELO RIVERA<br><br>Apelado | KLAN202400592 | *Apelación*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Sobre: Interdicto Posesorio<br><br>Caso Núm.: FA2024CV00219 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro.

Rodríguez Casillas, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de enero de 2025.

Comparece ante nos, el *Sr. Francis Javier Santiago Maldonado* (en adelante; "Santiago Maldonado o apelante"). Solicita la revocación de la *Sentencia* dictada el 16 de mayo de 2024,[1] por el Tribunal de Primera Instancia, Sala Superior de Fajardo (en adelante; "TPI"). Mediante el referido dictamen, el TPI declaró *No Ha Lugar* la petición de interdicto posesorio instada por el apelante.

Evaluada la totalidad del expediente y el derecho aplicable, ***revocamos*** la *Sentencia* apelada. ***Veamos los fundamentos.***

**-I-**

De los *autos* surge que, el señor Santiago Maldonado instó una *Demanda* juramentada sobre interdicto posesorio e impugnación de embargo y subasta el **8 de marzo de 2024**.[2] Referente al interdicto posesorio, alegó que desde la compraventa del inmueble —el 11 de mayo de 2022— hasta los actos de

---

[1] Notificada 17 de mayo de 2024.
[2] Anejo 1 del Apelante, págs. 1 – 8.

perturbación cometidos por la *Sra. Ruth Noemí Alvelo Rivera* (en adelante; "Alvelo Rivera o apelada"), se encontraba en posesión del inmueble identificado como *"[n]úmero 5-E del Condominio Isleta Marina, ubicado en el Islote Cayo Obispo, Playa de Fajardo, Fajardo, Puerto Rico"*. Adujo que, se encontraba realizando una construcción *'grande'* al inmueble cuando la señora Alvelo Rivera cambió las cerraduras sin autorización ni conocimiento del apelante.

De su parte, la apelada compareció el **27 de marzo de 2024** mediante *"MOCIÓN ASUMIENDO LA REPRESENTACIÓN LEGAL Y EN SOLICITUD DE ORDEN DE CITACIÓN"*.[3]

Así las cosas, el **2 de abril de 2024**, el foro de instancia celebró una *Vista en su Fondo*.[4] A esta compareció el señor Santiago Maldonado con su abogado y la señora Alvelo Rivera junto a su representante legal. Antes de iniciar los testimonios, el apelante desistió de la acción de impugnación de embargo y subasta, por lo que se atendió solamente el interdicto posesorio.[5]

Iniciado el desfile de prueba, la parte apelante—demandante presentó los testimonios del señor Santiago Maldonado y la Sra. Livia Martínez Matos. En lo pertinente, el apelante testificó:

> *P: Actualmente, ¿dónde usted se queda?*
> *R: Me estoy quedando en el apartamento de mi hija.*
> *P: ¿Cuál es ese..*

---

[3] Anejo 2 del Apelante, págs. 9 – 26.

[4] Véase, *Transcripción de Prueba Oral* (TPO) de la *Vista en su Fondo* celebrada el 2 de abril de 2024.

[5] Ante ello, el TPI emitió una *Sentencia Parcial* el **16 de mayo de 2024**. En lo pertinente, determinó que:

> *Llamado el caso para Vista de Interdicto, la parte demandante informó al tribunal, inter alia, que ha decidido desistir voluntariamente de su causa de acción de IMPUGNACIÓN DE EMBARGO Y SUBASTA con relación a la codemandada Ruth Alvelo Rivera, toda vez que dicho asunto se está ventilando en otra sala de este Tribunal. Posterior a la vista, presentó escrito intitulado MOCIÓN SOLICITANDO DESISTIMIENTO SIN PERJUICIO. Allí informa al tribunal, inter alia, lo propio con relación a los codemandados Madeline Correa Rodríguez, Anibal Batista Padua y la Sociedad de Bienes Gananciales. Considerado el escrito, y en atención a lo preceptuado por la Regla 39.1 de Procedimiento Civil, se dicta Sentencia para que se entienda a la parte demandante por desistida de dichas causas de acción en este caso, sin perjuicio.*
> *Se ordena la continuación de los procesos exclusivamente en cuanto al INTERDICTO POSESORIO. Se ordena además se registre la presente por no existir razón alguna para posponer la misma hasta la resolución final del pleito, conforme preceptúa la Regla 42.3 de Procedimiento Civil. 32 LPRA Ap. V, R. 42.3.*

Véase; Anejo 4 del Apelante, pág. 28.

*R: El 7-E.*
*P: ¿Desde cuándo se está quedando allí?*
*R: Desde que empecé la construcción en el 5-E, mi apartamento.*
*P: El 5-E, ¿usted vivió en algún momento en el 5-E?*
*R: Yo vivía en la Torre 1, eh. ... vendí ese apartamento para mudarme a la Torre 2 en el 5-E, y yo vivía.*
*P: ¿Cuándo... ¿Cuándo comenzó a vivir en el 5-E?*
*R: Eh... La... (Inaudible)... compra se hizo en... en mayo 2022.*
*P: Sus pertenencias, ¿dónde están?*
*R: En mi apartamento, en el 5-E.*
*P: En el 5... Eh... Cuando hablamos de su pertenencia, ¿es su ropa en que ap ... dónde está?*
*R: Están en cajas porque estamos en ... o sea, la construcción es grande.*
*P: ¿Qué construcción están haciendo?*
*R: Estamos remodelando el apartamento completo: Baño, cocina, puertas.*
*P: ¿Cómo estaba cerrado ese apartamento?*
*R: Eh... Se hizo una... como se sacó la puerta principal para hacer el molde de cemento se hizo una puerta temporera. Esta puerta temporera está cerrada con un candado.[6]*
*[...]*
*P: ¿Desde cuándo usted ha vivido en esa propiedad?*
*R: Desde que la compró en mayo 2022.*
*P: 2022. Ahora en... para el mes de marzo, le pregunto, ¿si todavía usted tenía la propiedad?*
*R: ¿El mes de marzo...*
*P: De marzo... El mes pasado.*
*R: Eh... Bueno, sí, a principios.*
*P: ¿Quién paga el mantenimiento, si alguien, de esa propiedad?*
*R: Yo.*
*P: ¿Quién paga el CRIM, si alguien, por esa propiedad?*
*R: Yo.*
*P: Le pregunto, ¿si usted conoce a la señora Ruth N. Albelo-Rivera?*
*R: No.*
*P: ¿La había visto en algún momento?*
*P: No.*
*P: ¿En qué momento, si alguno, usted se enteró de que se iba a subastar ese apartamento?*
*R: Yo estaba... ¿A subastar...*
*P: a subastar.*
*R: Eh... Bueno, hubo, eh... hubo una subasta que se canceló porque ese apartamento eran hogar propio y en el Título de Propiedad, cuando en el Estudio de Título salió limpio.*
*P: ¿De qué manera usted se enteró, si se enteró, de que, eh. . . ese apartamento se le habían cambiado las cerraduras?*
*R: Eh... Yo estaba en mi oficina, era un miércoles, eh... un "week-end" largo, estábamos, eh... yo estaba ahí hasta el lunes, eh... un martes no estaba ahí, estaba en Caguas, una situación de mi mamá, y me llama el "realtor", que... que entendí... que se había comprado el apartamento, a decirme que, si yo sabía lo que pasó, y yo le digo: "¿Qué pasó?"; y me dice: "Vinieron los alguaciles y embargaron su apartamento"; y yo: "Pero, ¿de qué tú hablas... Si ese apartamento no debe, yo no le debo nada a nadie..."*
*P: Unjú.*
*R: Y llamé a la oficina a verificar y ellos me confirmar.*
*P: Cuando usted dice llamó a la oficina, ¿a qué oficina se refiere?*
*R: A la oficina de Administración.*
*P: Y, ¿qué. . . Y ellos, ¿no le...*

---

[6] TPO, pág. 33 línea 13 – pág. 34 línea 18.

*R: Ellos me confirmaron que sí, que había llegado a alguaciles y entraron al apartamento.*
*P: Eh... ¿Qué, si algo, usted le solicita a la honorable jueza?*
*R: Que me entreguen mi apartamento pa' trás, yo compré mi apartamento bien, hubo un estudio de título, salió limpio, el doctor tenía hogar seguro por dos años, "so..." y después que yo compro el apartamento pasa esto, es que no entiendo.*[7]

*[...]*

***HONORABLE JUEZ:*** *Yo tengo dos preguntas para el caballero...*
*P: Don Francis, eh... eh... de mis notas surge... ve, yo escribo mucho, así que a veces escribo tan rápido que, verdad... Que usted estaba haciendo una remodelación, usted utilizó la palabra para describir a remodelación: "Una remodelación grande..."*
*R: Grande.*
*P: Grande. Puertas, baño, cocina, comedor, todo eso; y, ¿cómo usted vivía allí con ese polvero y ese revolú de cosas allí adentro?*
*R: No porque es que mi hija tiene un apartamento en el. . . En la misma torre y yo estoy... me... quedándome en el apartamento de ella.*
*P: ¿Desde cuándo usted estaba en el apartamento de su hija mientras hacía esa remodelación grande?*
*R: Grande... Esa remo... Eso empezó, eh... yo diría, más o menos, eh... al fin de... Estamos en el 24, eh... como. . . Después del verano del 2023. Y después hubieron unos liqueos que nos paró la construcción de... del piso de arriba.*[8]

Por su parte, la administradora del condominio —la Sra. Livia Martínez Matos— a preguntas del abogado del apelante manifestó que:

*P: Yo le pregunto, eh... ¿si... ¿si usted se enteró de un embargo que se le hizo al apartamento del señor Santiago?*
*R: Sí.*
*P: Le pregunto, ¿por casualidad, usted estuvo presente cuando se fue a hacer el... a cambiar la cerradura?*
*R: No.*
*P: ¿Sabe usted si alguien fue a cambiar la cerradura de ese apartamento?*
*R: Sí.*
*P: ¿Quiénes fueron, si usted sabe?*
*R: Unos alguaciles.*
*P: Y le pregunto, ¿si esta señora también estuvo allí presente?*
*R: No puedo...*
*P: ¿Usted no estaba?*
*R: . . . ser testigo porque yo no estaba presente.*
*P: ¿Por qué sabe que fueron unos aguaciles?*
*R: Porque la Oficina de Administración nos llama, a mí como dueña de la compañía, a consultarme, a notificarme que tiene unos alguaciles allí, eh... para cambiar la cerradura de un apartamento; y reciben orientación conforme a nuestra... a nuestra experiencia.*
*P: Y en ese momento, le pregunto, ¿si se le dijeron a ustedes que era el apartamento donde residía o que le pertenecía a estor?*
*R: Fue identificado por nombre...*
*P: Por el nombre.*
*R: ... eso sí lo recuerdo.*

---

[7] TPO, pág. 36 línea 3 – pág. 38 línea 9.
[8] TPO, pág. 39 línea 1 – línea 24.

*P: Okay.*
**LCDO. MUÑIZ -VALLADARES:** *No tengo más preguntas para ella.*[9]

De otro lado, la parte demandada—apelada presentó los testimonios de la señora Alvelo Rivera, el Sr. Luis Ángel Delgado Feliciano y la Sra. Magda Ana Martínez Matos. Particularmente, la apelada expresó que:

*R: Ah, el mismo 21... Eh... La alguacil asignó esa fecha del 21 para que yo llevar a una persona ese día 21 a las 11:00 de la mañana al Condominio Isleta Marina para proceder a ... ella verifica que estuviera desocupado y si procedía, eh... utilizar este sistema de romper la cerradura para darme acceso al apartamento.*
*P: Muy bien. Y ese día, ¿qué ocurrió?*
*R: Ese día fuimos, eh... Eran dos alguaciles uniformadas, dos damas, iba el señor Luis Delgado, eh... estaba la se... la subadministradora del condominio, Magda Martínez, eh... las dos alguaciles y estaban, yo, y nos diri... y fuimos a la oficina; de ahí hicieron unas llamadas y demás.*
*P: ¿Cuándo fueron a la oficina?*
*R: El día 21.*
*P: Unjú.*
*R: Primero a la oficina donde las alguaciles hablaron con la administración y demás y, entonces, luego procedieron a subir al Apartamento 5-E, y de ahí, este... la alguacil, eh... dio la orden de romper la cerradura...*
*P: Okay.*
*R: Y el señor Luis Delgado, que fue la persona que yo conseguí para hacer eso..*
*P: Unjú. Sí...*
*R: ...procedió a romper el candado y ahí entraron las alguaciles, y yo entré, y el señor Luis Delgado y la subadministradora, también este... tuvo acceso al apartamento, eh...*
*P: ¿Quién se encontraba allí en ese momento, adentro?*
*R: Nadie, nadie.*
*P: Muy bien.*
*R: Estaba vacío, excepto, verdad, que habían unas pertenencias, o sea, una nevera unas...*
*P: Y una vez... una vez, este.. ¿entraron las alguaciles con usted, eh... entró don Pedro, también?*
*R: No, entró la subadministradora, Marta Martínez.*
*P: Okay. Y, ¿las alguaciles y usted...*
*R: Las alguaciles y yo y el señor Luis Delgado...*
*P: Exacto.*
*R: ...que... (Hablan Simultáneamente)...(Inaudible)...*
*P: Luis Delgado. Y cuando salieron, ¿qué ocurrió?*
*R: Cuando salieron...*
*P: O sea, vieron...*
*R: Cuando salieron, eh... eh... procedieron a... Yo llevé un candado, un candado nuevo.*
*P: ¿Quién le dio esa instrucción?*
*R: La alguacil.*
*P: Okay.*
*R: Y se lo entregué a la alguacil... Ella puso el candado, lo cerró... y pidió que le diera una llave a... a la administración de Isleta Marina, a la alguacil, que se iba a quedar con una llave y yo con otra. Y yo procedí a hacer la entrega de las llaves a la administración de Isleta y a la alguacil.*

---

[9] TPO, pág. 49 línea 20 – pág. 51 línea 6.

*P: Y, ¿actualmente, esas mismas personas son las que tienen las llaves?*

*R: Exactamente. Exactamente.*

*P: Está muy bien. Eh... ¿Cuándo usted supo que había un problema con la propiedad?*

*R: Eh... Recibí en... en Levittown, ¿verdad, en un lugar donde yo todavía trabajo, que es el Hogar Amapola, una demanda, y no sabía ni de dónde había salido, porque, realmente, no ... no tenía idea, hasta que leí, y, entonces, ahí me di cuenta de que alguien estaba reclamando que era dueño de ese apartamento.*

*P: Unjú. Que es en el procedimiento en que nos encontramos.*

*R: Exactamente, que nos trae aquí.*

*P: Muy bien.*[10]

En el contrainterrogatorio, la apelada contestó lo siguiente:

*P: ¿Cómo es que usted se entera de que ese apartamento, el 5 ese... se iba a vender en una subasta?*

*R: Por Un edicto del periódico El Nuevo Día.*

*P: ¿Cuándo...*

*R: Eh... La fecha del periódico no la sé, no la. . . no la anoté ni... ni me acuerdo.*

*P: A preguntas de la compañera, usted manifestó que no sabía. . . o sea, que se había enterado de que había un problema con... con ese apartamento, ¿eso fue lo que usted le contestó a la licenciada?*

*R: Cuando recibí la demanda...*

                              *[...]*

*P: ¿Dígame, en algún momento usted oyó o se enteró de que el apartamento le pertenecía al señor Francis Javier Santiago–Maldonado?*

*R: No*

*P: Y, en esa demanda que usted dice que recibió, ¿ahí sí se enteró de eso o no?*

*R: Yo recibí una demanda, solo eso.*

*P: ¿Usted fue al CRIM a inscribir ese apartamento a su nombre?*

*R: Yo fui donde la abogada.*

*P: No, no, la pregunta es, ¿si usted fue al CRIM...*

*R: No.*

*P: ... a solicitar que se inscribiera a su nombre?*

*R: Yo no.*

*P: ¿Otra persona fue por usted?*

*R: No... No.*

*P: Le pregunto, ¿si cuando usted se comunicó con el Condominio Isleta Marina, que dijo que había llamado a la oficina de administración, allí le explicaron que ese apartamento tenía problemas?*

*R: No.*

*P: No. Le pregunto, ¿si en el condominio le comentaron algo sobre este señor, Francis Javier Santiago- Maldonado...*

*R: (Inaudible)...*

*P: Tampoco.*

*P: Le pregunto, ¿si usted en algún momento preguntó quién era el dueño o quién era el dueño de esas pertenencias que habían allí que usted dice que vio?*

*R: No.*

*P: No. ¿No lo preguntó?*

*R: No.*

*P: Cuando vieron el apartamento, ¿usted estaba presente?*

*R: Sí.*

*P: Y para abrir ese apartamento, le pregunto, ¿si rompieron un candado que tenía?*

*R: Sí.*

---

[10] TPO, pág. 74 línea 13 – pág. 77 línea 14.

*P: Y yo le pregunto, ¿si cuando abrieron ese apartamento usted vio que adentro habían enseres eléctricos y otras pertenencias... nevera, por ejemplo, vio nevera allí?*

*[...]*

*R: Sí, eh.. . sí, yo... Sí.*

*[...]*

*P: Y ropa, ¿vio...*
*R: ¿Perdón...*
*P: Ropa...*
*R: No.*
*P: Le pregunto, si usted después que vio esa... lo que vio allí, ¿si usted hizo algunas gestiones para averiguar a quién pertenecían?*
*R: No.*
*P: No. ¿Ha hecho algunas gestiones para entregarle eso al dueño o a la dueña?*
*R: No.*
*P: Y, ¿qué ha hecho con esas pertenencias al día de hoy?*
*R: Nada.*

*[...]*

*P: Le pregunto, ¿si usted está, eh... viviendo ese apartamento?*
*R: No.*
*P: Eh... Esta pregunta va dirigida a ver si usted, si yo entendí bien, tenían tres llaves, de esas tres llaves usted tiene una y las otras dos se las dio a otras personas... ¿es así?*
*R: Sí.*
**LCDO. MUÑIZ-VALLADARES:** *Sí, no tengo más preguntas para ella. Gracias.[11]*

En el interrogatorio directo el Sr. Luis Ángel Delgado Feliciano

adujo que:

*R: Ella me contactó, este... junto con unos alguaciles para ir a Isleta Marina...*
*P: Unjú.*
*R: ...para abrir una puerta. Eh. Cuando llegamos al apartamento 'los' alguaciles me dijeron que procediera a abrir el apartamento...*
*P: Ok... Muy bien.*
*R: ... cuando... lo que corté fue un candado, cuando corté el candado... el candado lo abrió, eh... o sea, al... saqué el candado de la cadena y el alguacil fue 'lo' que abrió la puerta y entró primero.*
*P: Unjú. ¿Usted siguió sus instrucciones en todo momento...*
*R: Todo fue por el... lo que dijo el alguacil.*
*P: Unjú. Y, ¿quiénes se encontraban allí ese... en esa gestión?*
*R: Estaban 'los' dos alguaciles, eh... la administradora y doña Ruth y yo.*
*P: Muy bien. Eh... Cuando hicieron esa gestión y entraron, ¿a quién encontraron en la propiedad?*
*R: Estaba vacía.*
*P: Muy bien. Eso... Eso sería todo, don Luis.[12]*

No obstante, en el contrainterrogatorio señaló que:

*P: Don Luis usted acaba de manifestarle a la compañera de que ese, eh... cuando abrieron que estaba vacío, ¿esa fue su expresión?*
*R: Sí.*
*P: Cuando usted dice que está vacía, le pregunto, ¿si allí usted vio algunas pertenencias?*
*R: Pertenencias, sí, pero personas no.*
*P: Personas no, pero, habían pertenencias...*

---

[11] TPO, pág. 81 línea 4 – pág. 86 línea 17.
[12] TPO, pág. 95 línea 1 – línea 24.

*R: Sí.*
*P: Como, ¿qué tipo de pertenencia usted vio?*
*R: Eh... Eh...*
*P: No, no, no mire a la licenciada...*
*R: ¿Puedo, eh...*
*P: Sí, lo que usted vio...*
*R: Unas cajas.*
*P: Unas cajas. Y, ¿vio enseres eléctricos: nevera, estufa...*
*R: Sí.*
*P: Y, ¿ropa...*
*R: Pues, de verdad, que no sé porque estaba todo en cajas.*
*P: Ah, gracias.*

**LCDO. MUÑIZ-VALLADARES:** *No tengo más preguntas para él.*[13]

En el interrogatorio directo la Sra. Magda Ana Martínez Matos testificó, en lo pertinente, que:

*P: Y....*
*R: ...y esta servidora.*
*P: ¿En representación del condominio...*
*R: Correcto.*
*P: Muy bien. Eh... Una vez allí, ¿qué ocurrió...*
*R: Eh... Una vez allí, la alguacil ordenó que se... que se abriera la cerradura, que se... Que se abriera, que se cambiara.*
*P: Y, ¿se siguieron según las instrucciones...*
*R: Según las instrucciones de alguacil...*
*P: Muy bien.*
*R: ...por la orden.*
*P: Muy bien. Una vez, este... cumplieron con la instrucción de... del alguacil y entraron, ¿qué... ¿quién estaba allí?*
*R: Eh... Las dos alguaciles...*
*P: No, ¿quién se encontró adentro...*
*R: Ah, adentro... No, no había nadie, seres humanos, ninguno.*
*P: ¿En qué condición estaba el condomi... el apartamento?*
*R: Eh... El apartamento está en condiciones, este. . . no habitables, porque está en una remodelación, hay mucho polvo, mucha tierra, hay muchas cosas que están tapadas, y muchas, yo les diría, que muchos equipos como de construcción...*
*P: Okay.*
*R: ...materiales.*
*P: Sí. Máquinas...*

**LCDA. LONGO-MARRERO:** *No, no tenemos más preguntas, vuestro honor.*[14]

Por su parte, en el contrainterrogatorio expresó, en lo pertinente, que:

*P: Eh... Solamente para ver si yo... ¿Usted dijo que llevaba años y cuatro meses trabajando?*
*R: Alrededor.*
*P: (Inaudible)... Eh... Le pregunto, ¿si usted sabía de quién era ese apartamento?*
*R: Sí.*
                              *[...]*
*P: Le pregunto, si usted sabe, ¿quién vivía ahí... ¿quién poseía ese apartamento?*
*R: Sí.*
*P: Sí. ¿Quién era, dígale aquí a la honorable juez quién es?*

---

[13] TPO, pág. 97 línea 19 – pág. 98 línea 22.
[14] TPO, pág. 105 línea 13 – pág. 104 línea 9.

*R: El señor Francis.*
*P: ¿Usted lo ha visto aquí hoy?*
*R: Sí.*
*P: ¿dónde está...*
*R: A mí mano derecha, aquí al frente.*
*P: Para fines de la grabación que señaló al demandante. Le pregunto, ¿usted sabe desde cuándo el posee ese apartamento?*
*R: No.*
*P: Cuando usted llegó a trabajar allí, ¿ya él estaba...*
*R: Bueno, entiendo que sí.*
*P: Yo le pregunto, ¿si usted le notificó a esta señora y a las alguaciles que iban allí que ese apartamento lo poseía el señor Francisco Santiago?*
*R: Yo me limité a la Orden Judicial, a lo que me entregan las alguaciles.*
*P: En esa orden judicial no iba dirigida contra Francis Santiago, ¿verdad que no?*
*R: A mí me llegan unos documentos que ellos.*

[…]

*P: [L]a pregunta mía es que si en los documentos que le enseñaron a ustedes los alguaciles no iba dirigido contra el señor Francis Santiago, ¿verdad que no?*
*R: No.*

**LCDO. MUÑIZ-VALLADARES:** *No, no tengo más preguntas para ella, juez. Gracias.*[15]

Evaluada la prueba presentada, el TPI emitió una *Sentencia* el **16 de mayo de 2024**, notificada el 17 del mismo mes y año,[16] en la cual, formuló las siguientes determinaciones de hecho:

1. *El inmueble objeto de la causa de acción es el apartamento identificado con el número 5-E de la Torre II del Condominio Isleta Marina, ubicado en el Islote Cayo Obispo, Playa de Fajardo, Fajardo, Puerto Rico.*

2. *El demandante, Francis Javier Santiago Maldonado, reside en el Apartamento 7-L de la Torre II del Condominio Isleta Marina, Fajardo, Puerto Rico; y recibe su correspondencia en el P.O. Box 6142, Caguas, Puerto Rico 00726.*

3. *El demandante compró el apartamento identificado en el acápite 1 al Sr. Edgardo Miguel Colón el 11 de mayo de 2022.*

4. *El demandante compró el apartamento por el precio de $150,000.00.*

5. *Comprado el apartamento, el demandante se mudó a vivir con su hija en aras de entablar un proyecto grande de remodelación.*

6. *El demandante no reside en el inmueble relacionado en el acapite 1 desde verano de 2023.*

7. *La propiedad fue vendida en pública subasta en atención a orden y mandamiento librado para satisfacer cierta partida concedida en la Sentencia dictada en el caso KDP2012-0472.*

8. *El demandante advino en conocimiento de lo anterior, mediante una llamada telefónica de su realtor, el mismo que participó de la compraventa.*

---

[15] TPO, pág. 105 línea 13 – pág. 108 línea 5.
[16] Anejo 5 del Apelante, págs. 29 – 33.

9. *La codemandada Ruth N. Alvelo Rivera fue la persona que, en medio del proceso de subasta, compró la propiedad.*

10. *Habiendo adquirido el inmueble en cuestión en pública subasta, la codemandada Alvelo Rivera, asistió en compaña de alguaciles a cambiar las cerraduras del apartamento en cuestión.*

11. *Los codemandados Madeline Correa Rodríguez, Aníbal Batista Padua y la sociedad legal de bienes gananciales constituida por ellos fueron la parte demandante en el caso Civil Núm. KDP2012-0472, del Tribunal de Primera Instancia, Sala de San Juan.*

12. *Los esposos Correa Rodríguez-Batista Padua nunca fueron emplazados en este caso.*[17]

Basado en ello, el foro primario concluyó que no quedaron probados los requisitos para prevalecer en una acción de interdicto posesorio. En lo pertinente, determinó que:

*[L]a prueba presentada por el demandante no fue suficiente para establecer de que durante el año previo a la presentación de la demanda éste estaba en posesión real del inmueble en cuestión, naturalmente tampoco pudo establecer que los demandados le perturbaron en la misma. En primer orden, debemos despejar de la controversia a los codemandados Madeline Correa Rodríguez, Aníbal Batista Padua y la Sociedad Legal de Bienes Gananciales constituida por ellos. Primero, porque nunca fueron emplazados por el demandante y segundo, porque ninguna alegación ni prueba se trajo contra ellos. Como cuestión de hecho, ni mencionados fueron en el desfile probatorio.*

*El desfile probatorio, en su mayoría y a pesar de las advertencias del tribunal a tales efectos, se centró en establecer de quién era el apartamento en controversia. El demandante declaró que compró el apartamento en o para la fecha de 11 de mayo de 2022, y desde entonces se embarcó en un proceso de remodelación que calificó como "grande" reconociendo que él ni vivía ni vive allí. Este hecho, de por sí, es suficiente para declarar sin lugar el petitorio. Es un hecho indubitado que el demandante no ostenta ni ostentó la posesión real del inmueble en el año inmediatamente precedente a su petición. No nos persuade su argumento de que, con solo haber firmado la escritura de compraventa, sin más, deba entender este Tribunal que se encuentra en la posesión real por más que no viviese ni se encontrara allí. A pesar de las múltiples instancias en que se le preguntó a los testigos para que vincularan "pertenencias" al demandante, esto sencillamente no ocurrió. De hecho, ni constancia clara se nos probó de cuál era el contenido del inmueble cuando se ordenó su apertura por un Alguacil. Dicho en menos palabras, "dentro del interdicto posesorio no se dirimen cuestiones de título sino el hecho de la posesión real", Manrique v. Álvarez, 58 D.P.R. 74 (1941).*

*En segundo lugar, no podemos concurrir con la percepción del demandante de que la codemandada Ruth Alvelo Rivera le despojó de la posesión. A priori porque no la tuvo, pero además, porque el acto que estima el demandante que califiquemos como ilícito fue la compra de dicho inmueble por la codemandada en medio de un proceso de subasta para hacer valer un embargo dictado por el tribunal en el caso KDP2012-0472. Declinamos la invitación del demandante a obviar la presunción de validez que acompañan a los*

---

[17] *Íd.*, págs. 29 – 30.

*dictámenes judiciales. De hecho, debemos presumir que los procedimientos en dicho caso se llevaron con corrección y validez hasta que otra cosa se disponga por autoridad competente. Por consiguiente, de ninguna manera podemos colegir que el acto de la codemandada de comprar un inmueble en pública subasta pueda considerarse como un acto ilícito que merezca la interdicción posesoria.*

*Para concluir, si bien podemos comprender la lamentable situación que enfrenta el demandante, al ver que el apartamento que compró a un tercero, que ni siquiera es parte en este pleito, fue al poco tiempo subastado para hacer valer un embargo dictado en un caso judicial a favor de aquel. No puede usarse el interdicto posesorio para -de facto- declarar nulo un proceso de embargo y subasta decretado en un proceso judicial distinto, con otras partes, sobre otra materia y ante la consideración de otro juez. El interdicto posesorio, es y solamente es, una acción inherentemente posesoria.[18]*

Por lo cual, declaró *No Ha Lugar* la petición de interdicto posesorio.

Inconforme con el proceder del TPI, el señor Santiago Maldonado presentó el **13 de junio de 2024** el recurso apelativo que nos ocupa. Señaló la comisión de los siguientes errores:

*Erró el honorable tribunal de primera instancia al determinar y concluir que el apelante no presentó prueba suficiente para establecer que durante el año previo a la presentación de la demanda éste estaba en posesión real del inmueble.*

*Erró el honorable tribunal de primera instancia al determinar que el apelante no pudo establecer que la parte apelada le perturbó y despojó de su posesión al cambiar las cerraduras del apartamento sin su autorización.*

Varios trámites procesales después, el **16 de septiembre de 2024** compareció la apelada mediante *"Alegato de la Parte Apelada Ruth N. Alvelo Rivera"*. Habiendo comparecido ambas partes, damos por sometido el asunto.

-II-

-A-

De umbral, el Código Civil de Puerto Rico (2020) en su artículo 741 nos dicta la noción del derecho de propiedad:

*La propiedad es el derecho por virtud del cual una cosa pertenece en particular a una persona con exclusión de cualquiera otra.*

*La propiedad concede el derecho de gozar y disponer de las cosas sin más limitaciones que las establecidas en las leyes.*

*El propietario tiene acción contra el tenedor y el poseedor de la cosa para reivindicarla.*

---

[18] *Íd.*, págs. 32 – 33.

> *Cuando el derecho de propiedad recae sobre cosas se llama dominio.*[19]

Es decir, cuando hablamos del derecho de propiedad reconocemos la acción de dominio que puede ejercer el propietario sobre la cosa. Por ello, el propietario puede ejercer una acción contra el tenedor y el **poseedor** de la cosa para reivindicarla. En ese sentido, estamos hablando de **derechos reales** los cuales son definidos como: "*[a]quellos que crean una relación inmediata y directa entre un bien y la persona a cuyo poder aquel se encuentra sometido, facultando al titular a hacerlos valer frente a todos*".[20]

Ahora, en lo que respecta al derecho real de ***posesión***, el Artículo 703 del Código Civil lo define como: *"[l]a tenencia de una cosa o el disfrute de un derecho por una persona".*[21]

Por su parte, el Artículo 706 nos indica que la posesión puede ser ejercida **por la misma persona que los tiene y disfruta, o por otra a su nombre**.[22] Por ello, el Artículo 707 establece que la posesión de los bienes se puede tener en uno de dos conceptos:

> **(a)** *en el de **dueño**; o*
> **(b)** *en el de **tenedor**, para conservarlos o disfrutarlos, perteneciendo el dominio a otra persona.*[23]

De igual modo, el Artículo 704 nos distingue dos (2) clases de posesión; a saber, la **natural** y la **civil**:

> **Posesión natural** es la <u>tenencia de una cosa o el disfrute de un derecho por una persona.</u>
> **Posesión civil** es esa misma tenencia o disfrute, <u>unidos a la intención de haber la cosa o derecho como suyos.</u>[24]

Por lo cual, el Artículo 714 establece que la posesión puede adquirirse de ***modo originario*** o de ***modo derivativo***:

> **[L]a posesión originaria** *es aquella que se adquiere por la ocupación material de los bienes poseídos, o por el hecho de estos quedar sujetos a la acción de la voluntad de quien la adquiere, sin el concurso de la voluntad del poseedor anterior.*

---

[19] Artículo 741 del *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 7951.
[20] Artículo 697 del *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 7661.
[21] 31 LPRA sec. 7821.
[22] 31 LPRA sec. 7824.
[23] 31 LPRA sec. 7825. *Énfasis nuestro.*
[24] 31 LPRA sec. 7822. *Énfasis nuestro.*

> *La posesión derivativa se adquiere por los actos y las formalidades legales establecidas para adquirir tal derecho.*[25]

A todo lo antes dicho, el Artículo 708 hace una presunción del concepto en que se disfruta la posesión:

> *Se presume que la posesión se sigue disfrutando **en el mismo concepto en que se adquirió, mientras no se pruebe lo contrario**.*[26]

También, el Artículo 737 hace la siguiente presunción de posesión en el tiempo intermedio:

> *Se presume que el poseedor actual que demuestra su posesión **en época anterior**, ha poseído durante el tiempo intermedio, mientras no se demuestre lo contrario.*[27]

Cabe destacar que el Artículo 719 establece tres (3) actos que **no afectan la posesión**, a saber:

> *(a) los autorizados;*
> *(b) los ejecutados clandestinamente y sin conocimiento del poseedor de una cosa;*
> *(c) los ejecutados con violencia.*[28]

Por lo tanto, los Artículos 723, 724 y 725 de nuestro Código Civil están predicados en la protección de la posesión. En ese sentido, el *"poseedor puede, además de las **acciones penales**, ejercer actos o acogerse a los medios de **legítima defensa** de su posesión"*.[29]

También, el poseedor tiene el derecho de la **protección interdictal** a ser respetado en su posesión, *"si es inquietado en ella indebidamente, debe ser amparado o restituido en dicha posesión por los medios que la ley procesal establece"*.[30] De igual forma, *"la persona con derecho a poseer un bien tiene acción para promover el **juicio de desahucio** contra cualquier poseedor sin derecho a poseer"*.[31]

Conforme a lo antes indicado, el Artículo 738 del aludido Código establece tres (3) maneras de **perder la posesión**; a saber:

> *(a) por abandono de la cosa;*

---

[25] 31 LPRA sec. 7841. *Énfasis nuestro.*
[26] 31 LPRA sec. 7826. *Énfasis nuestro.*
[27] 31 LPRA sec. 7894. *Énfasis nuestro.*
[28] 31 LPRA sec. 7846. *Énfasis nuestro.*
[29] Artículo 723 del *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 7861.
[30] Artículo 724 del *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 7862.
[31] Artículo 725 del *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 7863.

*(b)* *por cesión hecha a otro por título oneroso o gratuito; o*
*(c)* *por destrucción o pérdida total de la cosa, o por quedar ésta fuera del comercio.*[32]

Además, dicho articulado indica que la posesión de hecho **también se pierde** *"por la posesión de otro* <u>*por más de un (1) año, aun en contra de la voluntad del antiguo poseedor"*</u>.[33]

En virtud del ordenamiento antes esbozado, es que se autoriza al andamiaje judicial a intervenir como hecho de todo poseedor.[34] Por lo cual, *"[n]o es determinante si la posesión está o no justificada, sino más bien que haya una existencia de posesión de hecho que, en determinado momento,* <u>*esté expuesta a perderse o ya se haya perdido"*</u>.[35]

**-B-**

Como vimos, nuestro Código Civil establece un ordenamiento dirigido al reconocimiento y la protección del derecho de posesión. Es preciso añadir que, los Artículos 690 al 695 del Código de Enjuiciamiento Civil establecen el mecanismo del recurso extraordinario del ***injunction*** para recobrar la posesión de propiedad inmueble.[36]

En específico, el Artículo 690 del Código de Enjuiciamiento Civil establece cuando se concederá el *injunction* para **retener o recobrar** la posesión material de una propiedad inmueble:

> *Se concederá un injunction para retener o recobrar la posesión material de propiedad inmueble, a instancia de parte interesada, siempre que ésta demuestre, a satisfacción del tribunal, que ha sido perturbada en la posesión o tenencia de dicha propiedad por actos que manifiesten la intención de inquietarle o despojarle, o cuando haya sido ya despojada de dicha posesión o tenencia.*[37]

---

[32] 31 LPRA sec. 7895. *Énfasis nuestro.*
[33] *Íd.*
[34] J.R. Vélez Torres, *Curso de Derecho Civil: Los Bienes, Los Derechos Reales*, 5ta ed., Madrid, Ed. Offirgraff, 2005, T. II, pág. 132 citado en *Miranda Cruz v. SLG Ritch*, 176 DPR 951, 960 (2009).
[35] *Íd.*
[36] Arts. 690 – 695 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, según enmendado, 32 LPRA sec. 3561 – 3566.
[37] 32 LPRA sec. 3561.

El propósito fundamental del *injunction* para retener o recobrar la posesión está destinado para *"[d]ar rápida y eficaz protección a toda persona que encontrándose en la posesión quieta y pacífica de un inmueble <u>sea perturbada en o despojada de esa posesión por el acto ilegal de otra persona"</u>.*[38]

El Artículo 691 del Código de Enjuiciamiento Civil exige (2) dos elementos básicos, entre otros, que deben constar en la demanda:

> *La demanda será redactada y jurada de acuerdo con las disposiciones del Código de Enjuiciamiento Civil, y hará constar:*
> *(1) Que el demandante, **dentro del año** precedente de la presentación de la demanda, estaba en la posesión real de la propiedad que en dicha demanda se describe, si se trata de recobrarla, y estaba y está, si de retenerla.*
> *(2) Que ha sido perturbado o despojado de dicha posesión o tenencia.*
> *Deberá también describir claramente los hechos constitutivos de la perturbación o despojo, así como si dichos actos fueron realizados por el demandado o por otra persona por orden de éste.* [39]

El Tribunal Supremo de Puerto Rico ha sostenido: *"[q]ue una demanda que alegue que el demandante **<u>posee determinado inmueble, [a]ctos de perturbación y de despojo por los demandados, y que éstos ocupan parte de la finca, detentando así la posesión, es suficiente"</u>.*[40] De igual forma, un requisito importante es precisar que el demandante estuvo en posesión en ***<u>determinada fecha dentro del año con anterioridad a la presentación de la demanda y si se le privó de tal posesión</u>***.[41]

Además, se ha expresado que el despojo que da derecho a acudir a solicitar un interdicto posesorio *"[e]s aquel que ha sido realizado por el demandado u otra persona por orden de éste, sin*

[38] *Ramos v. Puig*, 61 DPR 83, 85 (1942). *Énfasis nuestro.*
[39] 32 LPRA sec. 3562. *Énfasis nuestro.*
[40] *Miranda Cruz v. SLG Ritch*, 176 DPR 951, 962 (2009).; Véase, además, *Buxeda Jr v. Escalera*, 47 DPR 647, 651 (1934).
[41] *Miranda Cruz v. SLG Ritch, supra*, a la pág. 962.; Véase, además, E. Fontánez Torres & R. Ramírez Ballagas, *Derechos Reales,* 80 Rev. Jur. UPR 779, 781 – 783 (2011).

*intervención judicial".*[42] En los interdictos posesorios, el demandante no tiene que alegar pérdida de la posesión mediante violencia o medios clandestinos.[43]

Por último, una vez concedido el interdicto posesorio, el Artículo 695 del Código de Enjuiciamiento Civil dispone que:

> *El predicho injunction ordenará que el demandante sea restablecido en la posesión y requerirá al perturbador para que en lo sucesivo se abstenga de cometer tales actos u otros que manifiesten el mismo propósito, bajo apercibimiento de desacato al tribunal por desobediencia al predicho injunction.*[44]

Sabido es que la sentencia que se dicte en casos de interdictos para recobrar la posesión de una propiedad no tiene autoridad de cosa juzgada sobre el derecho de las partes contendientes sobre la finca en cuestión.[45] Nótese, *"[q]ue es el hecho de la posesión de una propiedad inmueble, no el derecho a su posesión, lo que puede litigarse en acciones interdictales para retener o recobrar la posesión de inmuebles".*[46]

**-III-**

En síntesis, el señor Santiago Maldonado apunta que el TPI incidió al denegar la solicitud de interdicto posesorio a su favor. Sostiene que el foro primario erró al determinar que no presentó prueba suficiente para establecer los requisitos del interdicto posesorio, entiéndase: (1) que el apelante—demandante estaba en posesión del inmueble dentro del año precedente a la presentación de la demanda, y (2) que fue perturbado de dicha posesión. Tiene razón. Veamos.

De entrada, aunque en el caso epígrafe el señor Santiago Maldonado instó una acción sobre *impugnación de embargo y subasta e interdicto posesorio,* desistió de la *impugnación* en el

---

[42] *Ramos v. Puig,* 61 DPR 83, 85 (1942).
[43] *Martorell v. Municipio de Dorado,* 70 DPR 380, 383 – 384 (1949).
[44] 32 LPRA sec. 3566. *Énfasis nuestro.*
[45] *Miranda Cruz v. SLG Ritch, supra,* a las págs. 967 – 968 (2009).
[46] *Miranda Cruz v. SLG Ritch, supra,* a la pág. 967.; *Disdier Pacheco v. García,* 101 DPR 541, 547 (1973).

presente pleito para continuar únicamente con la petición interdictal. Debemos recalcar que en la acción de interdicto posesorio no se atiende asunto alguno de titularidad, sino que *el demandante estuvo en posesión de tal inmueble en determinada fecha dentro del año con anterioridad a la presentación de la demanda y se le privó de tal posesión.*

Es por ello que, el apelante estableció que disfrutaba de la posesión del inmueble descrito como apartamento *"[n]úmero 5-E del Condominio Isleta Marina, ubicado en el Islote Cayo Obispo, Playa de Fajardo, Fajardo, Puerto Rico".* Sostuvo, además que, el inmueble se encontraba en una construcción "grande" que había comenzado *"más o menos después del verano de 2023"*, por tal razón sus pertenencias continuaban en el apartamento aun cuando estaba quedándose en el apartamento de su hija. Todavía más, además de las pertenencias, el apelante realizaba los pagos de mantenimiento y del CRIM de la propiedad. De igual modo, mantenía un candado en la puerta de entrada para proteger la propiedad que allí guardaba. Ese hecho era conocido por la administración del condominio.

Ahora bien, dicha posesión fue perturbada por la señora Alvelo Rivera, cuando llegó al condominio en compañía de alguaciles, rompió el candado y encontró las pertenencias del apelante que allí estaban.

Ante la acción radicada por el apelante para recuperar la posesión del inmueble, el foro de instancia erradamente determinó que ante el reconocimiento del apelante de que no vivía en el apartamento por la construcción que allí realizaba, esto era un hecho suficiente para declarar sin lugar la petición interdictal. Reiteramos que dicha conclusión es incorrecta, pues lo relevante en la solicitud de interdicto es el hecho de la posesión.

Contrario a la determinación del foro primario, entendemos que el apelante sí ostentaba la posesión del inmueble al establecer que estaba realizando una construcción *'grande'* en el inmueble, que efectuaba pagos de CRIM y mantenimiento, que sus pertenencias aún se encontraban en el apartamento y que el mismo estaba cerrado por un candado. Incluso, varios de los testimonios señalaron haber visto unas pertenecías y/o enseres en el apartamento.

Por otro lado, el acto de perturbación, aun cuando es resultado de un proceso judicial independiente, no podemos obviar que afectó la posesión del apelante, por lo que, este tenía derecho a radicar una acción para recuperar la misma. Por lo cual, es forzoso concluir que el foro de instancia erró al no conceder el interdicto posesorio a favor del apelante.

En este caso, la demanda fue presentada dentro del año establecido, el apelante demostró que estaba en posesión del inmueble, y que dicha posesión fue perturbada por la apelada—demandada. Ciertamente, no es el derecho de la posesión o asuntos entornos a la titularidad lo importante, es el hecho de la posesión lo que se atiende en el presente pleito. Ante tal hecho, corresponde revocar la *Sentencia* apelada y conceder el interdicto posesorio a favor del demandante.

**-IV-**

De conformidad con lo antes expuesto, ***revocamos*** la *Sentencia* apelada y concedemos el interdicto posesorio a favor del apelante. Así, se devuelve el caso al TPI para la continuación de los procesos, conforme a lo expuesto en este dictamen.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones